Tyson HUSSION, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO;
Hayden Forest Products; and Hawkeye
Security Insurance Company, Respon-
dents.

No. 99CA0766.

Colorado Court of Appeals,
Div. II.

Nov. 12, 1999.

Marlin W. Burke, Denver, Colorado, for
Petitioner.

No Appearance for Respondent the Industrial Claim Appeals Office of the State of Colorado.

Anderson, Campbell & Laugesen, P.C., Stacy J. Tarler, Michael J. Decker, Denver, Colorado, for Respondents Hayden Forest Products and Hawkeye Security Insurance Company.

Opinion by Judge CRISWELL.

In this workers' compensation proceeding, Tyson Hussion (claimant) seeks review of the final order issued by the Industrial Claim Appeals Office (Panel) awarding temporary total disability (TTD) benefits based upon his average weekly wage pursuant to § 8–42–105(1), C.R.S.1999, rather than the maximum allowable rate. We affirm.

Claimant, while a minor, sustained an admitted industrial injury. The parties stipulated that claimant was entitled to TTD benefits. They also stipulated that the injury had produced a permanent impairment which would further entitle claimant to permanent partial disability (PPD) benefits once he reached maximum medical improvement (MMI). It would be only upon claimant's obtaining MMI, however, that the degree of any PPD could be determined.

Claimant argued that, because he was a minor, § 8–42–102(4), C.R.S.1999, required that his TTD benefits, as well as his later benefits, be calculated at the maximum rate payable under the Workers' Compensation Act (the Act). However, the Administrative Law Judge (ALJ) construed § 8–42–102(4) as applying only to PPD benefits, and he awarded claimant TTD benefits based upon the standard rate of 66 2/3% of his average weekly wage in accordance with § 8–42–105(1).

On review, the Panel upheld the ALJ's award of TTD benefits, from which decision claimant is prosecuting this appeal.

Section 8–42–102(4) provides that:

Where an employee is a minor and the disability is temporary, the average weekly wage of such minor shall be determined by the division as in cases of disability of adults. *Where the disability of such minor is permanent* or if benefits under articles 40 to 47 of this title accrue because of the death of such minor, *compensation to said minor* or death benefits to said minor's dependents shall be paid at the maximum rate of compensation payable under said articles *at the time of the determination of such permanency* or of such death. (emphasis supplied)

Claimant argues that, because his injury will ultimately result in the determination that he has suffered *some* permanent disability, all "compensation" payable to him, both temporary and permanent, must be calculated at the maximum rate allowed. We disagree.

We agree with claimant that the term "compensation," as used in the Act, may refer to benefits paid for both temporary and permanent disabilities or impairments. *See Wild West Radio, Inc. v. Industrial Claim Appeals Office,* 886 P.2d 304 (Colo.App.1994), *aff'd after remand* 905 P.2d 6 (Colo.App. 1995) ("compensation" refers to all benefits other than medical benefits). We also accept his assertion that his injury will result in a future determination that he has sustained some permanent partial disability.

Nevertheless, we reject his conclusion that, in a case such as his, he must be paid temporary benefits at the maximum rate referred to in § 8–42–102(4). Rather, we conclude, for at least two reasons, that such a construction of this statute would be contrary to its obvious purpose.

The primary goal in determining the meaning of a statute is to ascertain and to give effect to the legislative intent by construing the words of the statute according to their plain and ordinary meaning. *Golden Animal Hospital v. Horton,* 897 P.2d 833 (Colo.1995).

Here, the statute on its face mandates the payment at the maximum rate only in the case in which a minor sustains a permanent disability. Likewise, the statute is specific in requiring a "determination of such permanency" before the specific rate of compensation can be determined. And, such a permanent disability determination cannot be made until a claimant reaches MMI. While this concept is one that was initially

created by the courts, *see, e.g., London Guarantee & Accident Co. v. Industrial Commission,* 72 Colo. 177, 210 P. 70 (1922), the Act now expressly requires that a claimant reach MMI before a determination of any permanent impairment, whether scheduled or unscheduled, can be made. Section 8–42–107(8), C.R.S.1999.

Further, while claimant may ultimately be determined to have sustained a permanent impairment, that assumption certainly does not mean that his *present* disability is permanent. On the contrary, he is presently totally disabled, and his present benefits are based upon such total disability. The parties' stipulation, however, assumes that any permanent disability will be only partial, not total. Hence, to the extent that his present total disability exceeds any future partial disability, that excess is only temporary and will dissipate as he approaches MMI. To the extent that TTD benefits are being paid for this excess, the pertinent statute, on its face, prohibits their payment at the maximum rate.

Second, the two forms of compensation benefits have different purposes. TTD benefits compensate the worker for actual lost earnings because his temporary disability prevents him from working. In contrast, PPD benefits compensate a worker for the permanent loss of future earning capacity. *Mesa Manor v. Industrial Claim Appeals Office,* 881 P.2d 443 (Colo.App.1994). By treating temporary and permanent disability differently, § 8–42–102(4) recognizes this distinction in purposes.

Further, the General Assembly enacted § 8–42–102(4) to deal with a minor's permanent loss of earning capacity, not his temporary wage loss. In enacting this statute, that body recognized that minors generally earn less than adults and that a minor's permanent disability extends over a longer working life than that of a disabled adult. Thus, it intended § 8–42–102(4) to act as a special protection for minors to rectify the disparity that would normally occur between permanently injured adults and minors when PPD benefits are calculated based on the average weekly wage. *Arkansas Valley Seeds, Inc. v. Industrial Claim Appeals Office,* 972 P.2d 695 (Colo.App.1998).

The harm ameliorated by § 8–42–102(4) begins to be felt, therefore, when the minor worker becomes eligible for an award of PPD benefits. The problem addressed by the statute is presented, if at all, to a substantially lesser degree if only TTD benefits are at issue. There is, therefore, a rational basis for authorizing the payment of benefits at the maximum rate only after the claimant's permanent disability has been determined.

Claimant argues, however, that his right to permanent disability benefits should not depend upon the occurrence of a formal determination as to MMI. In support, he relies upon *Estate of Huey v. J.C. Trucking, Inc.,* 837 P.2d 1218 (Colo.1992), in which a deceased claimant's survivors were allowed to receive benefits even though no award had been made before the death. There, the right to the benefits had accrued prior to the death. We do not consider the decision in *Estate of Huey v. J.C. Trucking, Inc., supra,* to be relevant authority upon the question of claimant's entitlement to permanent disability benefits prior to MMI. Further, we note that § 8–42–104(2) specifically anticipates the possibility that a minor might die before a determination of benefits has been made and that, in such case, it provides for application of the maximum wage rate when an injury-related death occurs.

The order is affirmed.

Judge MARQUEZ and Judge RULAND concur.